Eric JENKINS, Plaintiff–Appellant,

v.

Lt. HAUBERT, Defendant–Appellee.

No. 98–2408.

United States Court of Appeals, Second Circuit.

Argued Nov. 19, 1998.

Decided June 11, 1999.

20

David G. Hille, White & Case, New York, NY, for Plaintiff–Appellant.

Michael B. Siller, Assistant Attorney General of the State of New York (Dennis Vacco, Attorney General of the State of New York, John W. McDonnell, Deputy Solicitor General, Michael S. Belohlavek, Assistant Attorney General, on the brief), New York, NY, for Defendant–Appellee.

Before: MINER, WALKER, and SACK, Circuit Judges.

JOHN M. WALKER, Jr., Circuit Judge:

Plaintiff-appellant Eric Jenkins, formerly an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), appeals from the judgment of the United States District Court for the Southern District of New York (Mukasey, J.) dismissing his 42 U.S.C. § 1983 action. In that action, Jenkins alleged that defendant-appellee Lieutenant Michael Haubert, an employee of DOCS, violated his constitutional right to procedural due process in the course of presiding over two separate disciplinary hearings.

Jenkins claimed that at the first hearing, on July 26, 1994, Haubert improperly denied his request to call four witnesses. At the hearing's conclusion, Haubert found Jenkins guilty and sentenced him to thirty

days in keeplock, "a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. Le-Fevre*, 891 F.2d 38, 39 (2d Cir.1989) (citing N.Y. Comp.Codes R. & Regs. tit. 7, § 251–1.6). Jenkins unsuccessfully appealed the sentence to the prison superintendent. On August 14, 1994, Jenkins filed a claim in New York Supreme Court pursuant to New York CPLR Article 78, alleging that he was denied due process by Haubert's refusal to hear his witnesses.

Jenkin's Article 78 claim was pending when the second disciplinary hearing began on November 23, 1994. Jenkins requested a different hearing officer on the ground that Haubert would be biased against him on account of Jenkin's Article 78 proceeding, which named Haubert as a defendant. Haubert denied that request, found Jenkins guilty of the new charges, and again sentenced him to thirty days in keeplock. Jenkins unsuccessfully appealed this sentence to the prison superintendent, but did not file an Article 78 proceeding to challenge it. On November 28, 1994, the New York Supreme Court dismissed Jenkin's Article 78 claim. On July 21, 1995, Jenkins filed this § 1983 action in the district court.

In two separate opinions, the district court dismissed Jenkin's claims. In the first, the district court held that Jenkins was collaterally estopped from relitigating the claims arising out of the first disciplinary hearing on account of the state supreme court's dismissal of his Article 78 proceeding. *See Jenkins v. Haubert*, No. 95 Civ. 5453, 1996 WL 350685 (S.D.N.Y. June 26, 1996). In the second, the district court held that Jenkins' § 1983 claim arising out of the second hearing was not cognizable under the Supreme Court's decisions in *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), and *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). *See Jenkins v. Haubert*, No. 95 Civ. 5453, 1998 WL 148332 (S.D.N.Y. Mar.30, 1998). Jenkins appeals only from that portion of the judgment entered upon the second opinion.

## DISCUSSION

■ We review the district court's dismissal of the complaint *de novo*, *see Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997); *Close v. New York*, 125 F.3d 31, 35–36 (2d Cir.1997), and accept as true all material factual allegations in the complaint, *see Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998).

The sole issue in this appeal is whether *Heck* and *Edwards* bar a § 1983 claim on facts such as these, where a prisoner (or former prisoner) alleges a constitutional violation arising out of the imposition of intra-prison disciplinary sanctions that have no effect on the duration of the prisoner's overall confinement. This is an open question in our circuit. We now hold that *Heck* and *Edwards* do not bar a § 1983 claim challenging the conditions of a prisoner's confinement where the prisoner is unable to challenge the conditions through a petition for federal habeas corpus. Accordingly, the district court incorrectly determined that Jenkin's § 1983 claim was not cognizable. We also hold, however, that the defendant in such an action may assert one or more affirmative defenses that can result in the dismissal of the plaintiff's claim. We therefore remand this case to give Haubert the opportunity to assert the availability of such defenses.

## I.   *The Statutory Framework*

As was true in *Heck v. Humphrey*, "[t]his case lies at the intersection of the two most fertile sources of federal-court prisoner litigation—the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983, and the federal habeas corpus statute, 28 U.S.C. § 2254." 512 U.S. at 480, 114 S.Ct. 2364. We begin by examining the two statutes.

## A. Section 1983

Section 1983, the vehicle most often used by prisoners challenging the conditions of their confinement, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983, by its own terms, contains no requirement that state judicial remedies be exhausted.

The precursor of § 1983, § 1 of the Civil Rights Act of 1871, was enacted at a time when "the Federal Government was clearly established as a guarantor of the basic federal rights of individuals against incursions by state power." *Patsy v. Florida Bd. of Regents,* 457 U.S. 496, 503, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Section 1983's purpose "was to interpose the federal courts between the States and the people, as guardians of the people's federal rights." *Id.* (internal quotation marks and citations omitted). Citing this legislative purpose, the Supreme Court has consistently held that courts should not impose an exhaustion requirement on § 1983. *See Patsy,* 457 U.S. at 502, 512, 102 S.Ct. 2557.

## B. The Habeas Corpus Statute

The federal habeas corpus statute, by contrast, explicitly requires exhaustion of state judicial remedies. Title 28 U.S.C. § 2254 provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court *shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State;* or there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant.

*Id.* § 2254(b) (emphasis added).

▆▆▆ Thus, under § 2254(b), a prisoner who seeks release from state custody on account of a wrongful conviction must first exhaust state judicial remedies before filing a habeas petition in district court. *See Preiser v. Rodriguez,* 411 U.S. 475, 489–92, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Such an action—"an attack by a person in custody upon the legality of that custody," *id.* at 484, 93 S.Ct. 1827—has long been considered the "heart" of habeas corpus. *See id.* at 498, 93 S.Ct. 1827; *see also McCarthy v. Bronson,* 500 U.S. 136, 141, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991). In upholding the exhaustion requirement, the Supreme Court has noted that any other course would violate Congress's intent to impose such a requirement, *see Preiser,* 411 U.S. at 489, 93 S.Ct. 1827, and frustrate considerations of federal-state comity that are at the root of the exhaustion requirement, *see id.* at 491, 93 S.Ct. 1827. The rule of exhaustion in federal habeas corpus actions preserves " 'a proper respect for state functions,' " *id.* at 491, 93 S.Ct. 1827 (quoting *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)), by affording state courts the first opportunity to correct their own constitutional errors.

▆▆▆ The Supreme Court has held that the exhaustion requirement applies not only to the heart of habeas cases, but also to cases in which a prisoner challenges the validity of administrative action internal to the prison system that affects the fact or length of the prisoner's confinement. *See id.* at 491–92, 93 S.Ct. 1827. The rationale for exhaustion in such cases remains the same:

> [s]ince these internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of

those problems. Moreover, because most potential litigation involving state prisoners arises on a day-to-day basis, it is most efficiently and properly handled by the state administrative bodies and state courts, which are, for the most part, familiar with the grievances of state prisoners and in a better physical and practical position to deal with those grievances.

*Id.* at 492, 93 S.Ct. 1827. Thus, where the fact or duration of a prisoner's confinement is at issue, § 1983 is unavailable, and only § 2254(b) with its exhaustion requirement may be employed.

However, many intra-prison administrative or disciplinary decisions that could result in deprivations in violation of the Constitution do not affect the fact or length of a prisoner's confinement. For example, such decisions could result in a prisoner's placement in solitary confinement or keeplock, as occurred in this case, or some other form of confinement more restrictive than that imposed on the general prison population.

The Supreme Court has left open the question of whether federal habeas corpus is available to prisoners who challenge decisions imposing restrictive conditions of confinement. In *Preiser*, the Court suggested in dictum that habeas corpus might be available in such circumstances. *See Preiser*, 411 U.S. at 499, 93 S.Ct. 1827 ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal."). This dictum has been the subject of considerable discussion in the circuit courts. *See Sylvester v. Hanks*, 140 F.3d 713, 714 (7th Cir.1998); *Boudin v. Thomas*, 737 F.2d 261, 262 (2d Cir.1984) (Newman, J., concurring in the denial of a petition for rehearing in banc);

*McCollum v. Miller*, 695 F.2d 1044, 1046–47 (7th Cir.1982); *Krist v. Ricketts*, 504 F.2d 887, 887–88 (5th Cir.1974) (per curiam).

### C. The Prison Litigation Reform Act

In 1996, Congress enacted the Prison Litigation Reform Act, Pub.L. No. 104–134, 110 Stat. 1321 (1996) ("PLRA"), to amend a variety of statutory provisions governing federal court litigation by prisoners. Under the PLRA, before filing a § 1983 action, a prisoner first must exhaust the administrative procedures available to him. *See* 42 U.S.C. § 1997e(a). In addition, the PLRA authorizes a court to dismiss a prisoner's action regarding prison conditions without requiring administrative exhaustion if the claim on its face clearly fails to state a claim upon which relief can be granted, is frivolous or malicious, or seeks monetary relief from a defendant who is immune from suit. *See id.* § 1997e(c)(2). The PLRA also requires that a prisoner bringing an action for mental or emotional injuries suffered while in custody make a prior showing of physical injury. *See id.* at 1997e(e).[1]

### II. Supreme Court Precedent

As the foregoing discussion suggests, the question of whether § 1983 or habeas is available to a prisoner "is of considerable practical importance." *Preiser*, 411 U.S. at 477, 93 S.Ct. 1827. If habeas is a prisoner's exclusive federal remedy, then in most instances the prisoner must exhaust state judicial remedies before he may file his petition in federal court. Although the state courts' resolution of the prisoner's federal law claims are not binding on the federal courts, *see* 28 U.S.C. § 2254(d); *Preiser*, 411 U.S. at 497, 93 S.Ct. 1827, exhaustion generally

---

1. This court recently has held that the PLRA's exhaustion of remedies clause does not apply retroactively. *See Salahuddin v. Mead*, 174 F.3d 271 (2d Cir.1999). Regardless, Jenkin's claim would not be barred by the PLRA's exhaustion requirement because it is undisputed that Jenkins exhausted the administrative remedies available to him. After each disciplinary sanction was imposed, Jenkins unsuccessfully appealed the sanction to the prison superintendent.

takes a considerable period of time. In addition, habeas corpus does not provide for money damages. *See id.* at 493, 93 S.Ct. 1827.

### A. *Preiser v. Rodriguez*

Recognizing the practical reasons why a prisoner might prefer a § 1983 action to a petition for a writ of habeas corpus, the Supreme Court held in *Preiser* that, for those cases at the heart of habeas corpus—those in which a prisoner challenges the fact or length of his confinement—habeas is the exclusive federal remedy, at least where the prisoner seeks an injunction affecting the fact or length of his incarceration. *See* 411 U.S. at 500, 93 S.Ct. 1827. The plaintiffs in *Preiser* were state prisoners who were deprived of good-time credits as a result of disciplinary proceedings. They sought injunctive relief restoring their good-time credits, which would have resulted in their immediate release from confinement. *See id.* at 476–77, 93 S.Ct. 1827. Despite the admitted "literal applicability" of § 1983 to such situations, *id.* at 489, 93 S.Ct. 1827, the Court concluded that the 1871 Congress' broad grant of a cause of action in § 1983 had been superseded by the 1948 Congress' intent to confine prisoner actions contesting the validity of confinement to the habeas corpus statute, and to require exhaustion of state remedies in such cases. *See id.* at 489–90, 93 S.Ct. 1827.

### B. *Heck v. Humphrey*

In *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Court was confronted with a prisoner who sought money damages and not his release from confinement. He alleged that the county prosecutor and state police investigator had engaged in unlawful investigatory practices leading to his arrest and knowingly destroyed exculpatory evidence. *See Heck,* 512 U.S. at 479, 114 S.Ct. 2364. Heck also alleged that the prosecutor had used an "unlawful voice identification procedure" at trial. *Id.* In sum, Heck con-

tended that his criminal conviction had been obtained by the defendants' unlawful acts and he sought damages for his injuries.

The Court held that Heck's § 1983 damages claim was not cognizable. Acknowledging that *Preiser,* in dictum, suggested that a damages action by a state prisoner could be brought under § 1983 without prior exhaustion of state remedies, *see Heck,* 512 U.S. at 481, 114 S.Ct. 2364, the Court nevertheless held that a damages claim was not cognizable where its establishment "necessarily demonstrates the invalidity of the conviction." 512 U.S. at 481–82, 114 S.Ct. 2364. In such a case, the Court explained, the claimant could be said to be " 'attacking . . . the fact or length of . . . confinement.' " *Id.* at 482, 114 S.Ct. 2364 (quoting *Preiser,* 411 U.S. at 490, 93 S.Ct. 1827) (alteration in original). The Court implicitly recognized that a § 1983 damages action would be inconsistent with the *Preiser* holding. *See id.* at 483, 93 S.Ct. 1827.

The Court concluded by announcing what we refer to hereinafter as the "*Heck* rule":

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486–87, 114 S.Ct. 2364 (footnote omitted). The Court explained that in announcing this rule, it did not "engraft an exhaustion requirement upon § 1983, but rather den[ied] the existence of a cause of action." *Id.* at 489, 114 S.Ct. 2364.

■ Thus, to comply with the *Heck* rule, a prisoner, as a prerequisite to maintaining

his § 1983 action, must establish that his conviction or sentence has been overturned or invalidated by an administrative board or a state court or a federal court in a habeas proceeding. Or, if the suit is not explicitly directed at an unlawful conviction or sentence, the prisoner must establish that his suit does not "necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487, 114 S.Ct. 2364. Until recently, these requirements have generated confusion in the lower courts, especially with respect to the question of whether an intra-prison disciplinary sanction that does not affect the length of a prisoner's overall confinement constitutes a "conviction or sentence" within the meaning of the *Heck* rule. *Compare Stone–Bey v. Barnes*, 120 F.3d 718, 721 (7th Cir.1997) (*Heck* rule applies to § 1983 action challenging disciplinary segregation) *with Brown v. Plaut*, 131 F.3d 163, 167–68 (D.C.Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 2346, 141 L.Ed.2d 716 (1998) (finding *Heck* inapplicable to prisoner's challenge to administrative segregation). This confusion exists within this circuit as well. *Compare, e.g., Odom v. Coombe*, No. 95 Civ. 6378, 1998 WL 120361, at *3 (S.D.N.Y. Mar.18, 1998) (*Heck* rule bars § 1983 action by prisoner for due process violation in connection with disciplinary hearing); *Scott v. Scully*, No. 93 Civ. 8777, 1997 WL 539951, at *2 (S.D.N.Y. Aug.28, 1997) (same) *with Green v. New York City Dep't of Correction*, No. 98 Civ. 825, 1999 WL 219911, at *7 (S.D.N.Y. Apr.15, 1999) (no *Heck* bar to prisoner § 1983 suit challenging disciplinary segregation); *Jackson v. Johnson*, 15 F.Supp.2d 341, 348 (S.D.N.Y.1998) (same).

### C. *Edwards v. Balisok*

Much of the confusion regarding the applicability of the *Heck* rule to intra-prison sanctions stemmed from the Supreme Court's decision in *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). In *Edwards*, the Court held that a prisoner's § 1983 suit alleging deceit and unfairness by a hearing officer was not cognizable where the hearing resulted in a revocation of the prisoner's accrued good-time credits. *See id.* at 648, 117 S.Ct. 1584. Although the prisoner also was sentenced to 10 days in isolation and 20 days in segregation, *see id.* at 643, 117 S.Ct. 1584, the Court focused exclusively on the revocation of his good-time credits which, of course, affected the length of his overall sentence.

In its holding, the *Edwards* Court rejected the prisoner's distinction between challenges to the procedures used as opposed to the result of the hearing. *See id.* at 644, 117 S.Ct. 1584. The Court explained that even though the prisoner, unlike the plaintiff in *Preiser*, did not request the restoration of his good-time credits, a ruling in his favor on his procedural claims would necessarily vitiate the administrative decision revoking his good-time credits. As a consequence, the Court held that, consistent with *Preiser* and *Heck*, his § 1983 claim was not cognizable until the prison's decision had been overturned through administrative channels or by a state court or a federal court in a habeas proceeding. *See id.* at 648, 117 S.Ct. 1584. The Court did not address whether the prisoner could proceed separately with his § 1983 claim as to those portions of his sentence which affected only the conditions of his confinement. *See id.*

### D. *Spencer v. Kemna*

In *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), the Court considered whether a person who is no longer in custody for purposes of the habeas corpus statute (but was in custody when the petition was filed) may maintain a habeas suit in order to fulfill the favorable termination requirement imposed by *Heck* to pursue a § 1983 action. Spencer had filed a habeas petition while he was still in prison, challenging the revocation of his parole by the Missouri Board of Probation and Parole. By the time his petition was heard in the district court, he had been

released from prison, and the district court dismissed his petition as moot. *See id.* 118 S.Ct. at 982. The Eighth Circuit affirmed. *See Spencer v. Kemna,* 91 F.3d 1114 (8th Cir.1996).

The Supreme Court held that the petition was appropriately dismissed as moot because it did not present a case or controversy as required by Article III, § 2 of the Constitution. *See Spencer,* 118 S.Ct. at 986–88. Although the Court reaffirmed its precedents holding that a prisoner's challenge to his conviction always meets Article III's case or controversy requirement, *see, e.g., Carafas v. LaVallee,* 391 U.S. 234, 237, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), the Court declined to extend this presumption to Spencer's challenge to the revocation of his parole. The collateral consequences of such a revocation, the Court concluded, are too speculative and remote to justify a presumption that Article III's requirements are met.

The majority opinion suggested in dictum, however, that § 1983 might be available if Spencer challenged the procedures used by the Board of Parole, rather than its result, and if the alleged procedural defect did not " 'necessarily imply the invalidity of' the revocation." *Spencer,* 118 S.Ct. at 988 (quoting *Heck,* 512 U.S. at 487, 114 S.Ct. 2364). The concurring opinions in *Spencer* also addressed the availability of § 1983. They revealed that five justices hold the view that, where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be. This view had been first expressed by Justice Souter in his concurrence in *Heck,* which was joined by three other justices. In that concurrence, Justice Souter explained that *Heck* should be read as creating a favorable termination requirement *only* for those individuals to whom federal habeas corpus is in fact available. *See id.* 118 S.Ct. at 989. Reading the opinion more broadly than that, he explained, would effectively cut off all federal review for persons who do not have recourse to federal habeas corpus, and thus do not have at least one federal opportunity to satisfy the favorable termination requirement. He explained that a broad reading of *Heck* would needlessly place at risk the rights of those outside the intersection of § 1983 and the habeas statute, individuals not "in custody" for habeas purposes. If these individuals (people who were merely fined, for example, or who have completed short terms of imprisonment, probation, or parole, or who discover (through no fault of their own) a constitutional violation after full expiration of their sentences), like state prisoners, were required to show the prior invalidation of their convictions or sentences in order to obtain § 1983 damages for unconstitutional conviction or imprisonment, the result would be to deny any federal forum for claiming a deprivation of federal rights to those who cannot first obtain a favorable state ruling. The reason, of course, is that individuals not "in custody" cannot invoke federal habeas jurisdiction, the only statutory mechanism besides § 1983 by which individuals may sue state officials in federal court for violating federal rights. That would be an untoward result.

*Heck,* 512 U.S. at 500, 114 S.Ct. 2364 (Souter, J., concurring). Justice Souter's *Heck* concurrence was joined by Justices Blackmun, Stevens, and O'Connor. In her concurrence in *Spencer,* Justice Ginsburg indicated that she had come to agree with Justice's Souter's reasoning in *Heck,* bringing to five the number of justices who share that viewpoint. *See Spencer,* 118 S.Ct. at 990 (Ginsburg, J., concurring). Justice Breyer, who replaced Justice Blackmun on the Court, indicated his support for Justice Souter's view when he, along with Justices Ginsburg and O'Connor, joined Justice Souter's concurrence in *Spencer* reaffirming that view. *See Spencer,* 118 S.Ct. at 988 (Souter, J., concurring). Justice Stevens dissented in *Spencer,* but noted that "[g]iven the Court's holding that [Spencer] does not have a remedy under the habeas statute, it is

perfectly clear, as Justice Souter explains, that he may bring an action under § 1983." *Id.* 118 S.Ct. at 992 n. 8 (Stevens, J., dissenting).

### III. *Application*

■ As the foregoing discussion reveals, the Court has never announced that the *Heck* rule bars a prisoner's challenge under § 1983 to an administrative or disciplinary sanction that does not affect the overall length of his confinement. In *Preiser,* the Court confined its holding that habeas was the prisoner's exclusive remedy to the revocation of good-time credits. The Court reaffirmed its prior holdings in cases involving challenges to administrative or disciplinary segregation, stating that a § 1983 action "is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." 411 U.S. at 499, 93 S.Ct. 1827. In *Heck,* the Court did not address administrative or disciplinary segregation at all because the plaintiff challenged only the legality of his underlying criminal conviction and not any subsequent disciplinary action. Finally, in *Edwards,* the case most often cited by lower courts for the proposition that *Heck* applies to disciplinary judgments, the Supreme Court did not address the keeplock and solitary confinement sanctions that had accompanied the revocation of the prisoner's good-time credits. In sum, in each of these cases, the Court either assumed that challenges to the disciplinary segregation could be brought under § 1983, as in *Preiser;* was not presented with any such challenges, as in *Heck;* or ignored them for purposes of its opinion, as in *Edwards.*

We conclude, therefore, that nothing in Supreme Court precedent requires that the *Heck* rule be applied to a challenge by a prisoner to a term of disciplinary segre-gation. Moreover, we find that to apply the *Heck* rule in such circumstances would contravene the pronouncement of five justices that some federal remedy—either habeas corpus or § 1983—must be available. *See Spencer,* 118 S.Ct. at 988–90, 992 n. 8 (concurring and dissenting opinions); *Carr v. O'Leary,* 167 F.3d 1124, 1127 (7th Cir. 1999); *Cabrera v. City of Huntington Park,* 159 F.3d 374, 380 n. 6 (9th Cir.1998) (per curiam). Accordingly, we hold that a § 1983 suit by a prisoner, such as Jenkins, challenging the validity of a disciplinary or administrative sanction that does not affect the overall length of the prisoner's confinement is not barred by *Heck* and *Edwards.* In so holding, we join the Court of Appeals for the District of Columbia. *See Brown,* 131 F.3d at 167–68; *see also Anyanwutaku v. Moore,* 151 F.3d 1053, 1056 (D.C.Cir. 1998). The only other circuit court to have considered the question in a published opinion, the Seventh Circuit, initially came to a different conclusion, *see Stone–Bey,* 120 F.3d at 721, but in three recent opinions, that court has recognized that, in light of *Spencer,* its earlier decision will have to be reconsidered. *See Hoard v. Reddy,* 175 F.3d 531, 532–33 (7th Cir.1999) (Posner, C.J.); *Carr,* 167 F.3d at 1127 (Posner, C.J.); *Sylvester,* 140 F.3d at 714 (Easterbrook, J.).[2]

We do not rest our holding solely on our tally of votes on the Court for Justice Souter's view of *Heck.* The Court's decisions before *Spencer* also support our conclusion that Jenkins is not precluded by *Heck* and *Edwards* from bringing his § 1983 suit. Because we find that Jenkin's suit is properly characterized as a challenge to the conditions of his confinement, rather than as a challenge to the fact or duration of his confinement, *Heck* 's favorable termination requirement does not apply.

---

**2.** The Sixth Circuit held in an unpublished decision, *Bibbs v. Zummer,* No. 97–2112, 1999 WL 68573 (6th Cir.1999) (per curiam) that *Heck* and *Edwards* bar a prisoner's § 1983 suit challenging his placement in administra-tive segregation. *See id.* at 274–75. According to the rules of the Sixth Circuit, only published opinions have precedential value and citation to unpublished opinions is disfavored. *See* CTA6 Rule 24 and App. III, IOP 22.

28

■ "Conditions of confinement" is not a term of art; it has a plain meaning. It quite simply encompasses all conditions under which a prisoner is confined for his term of imprisonment. These include terms of disciplinary or administrative segregation such as keeplock or solitary confinement, as well as more general conditions affecting a prisoner's quality of life such as: the revocation of telephone or mail privileges or the right to purchase items otherwise available to prisoners, *see Preiser*, 411 U.S. at 498, 93 S.Ct. 1827; and the deprivation of exercise, medical care, adequate food and shelter, and other conditions that, if improperly imposed, could violate the Constitution. *See Figueroa v. Rivera*, 147 F.3d 77, 82 (1st Cir.1998); *Channer v. Mitchell*, 43 F.3d 786, 788 (2d Cir.1994) (per curiam). In short, any deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement.

In *Black v. Coughlin*, 76 F.3d 72 (2d Cir.1996), we held that a cause of action under § 1983 for the denial of due process in a prison disciplinary hearing accrues for statute of limitations purposes at the time that a prisoner succeeds in having the disciplinary ruling reversed in state court. *See id.* at 75. We now read *Black* as applying only to challenges to the fact or length of a prisoner's confinement where federal habeas corpus is otherwise actually available. Although *Black* could be read as having applied the *Heck* rule to a conditions of confinement case where federal habeas was unavailable, we decline to read *Black* that way, especially in light of the Supreme Court's decision in *Spencer*. The availability of § 1983 or habeas corpus was not the focus of *Black*, nor had the Supreme Court issued *Spencer* before *Black* was decided.

Under existing law, a prisoner pursuing a § 1983 claim still faces considerable hurdles before his claim may be heard on the merits. The Supreme Court held in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that to state a claim for a violation of due process, a prisoner first must identify a liberty interest protected by the Due Process Clause of which he was deprived. *See id.* at 484, 115 S.Ct. 2293. *Sandin* held that such interests are generally limited to "freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* (citations omitted).

■ In *Frazier v. Coughlin*, 81 F.3d 313 (2d Cir.1996) (per curiam), this court adopted a two-part test governing due process challenges to prison disciplinary proceedings: "[t]o prevail, [the plaintiff] must establish both that the confinement or restraint creates an 'atypical and significant hardship' under *Sandin*, and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." *Id.* at 317; *see also Arce v. Walker*, 139 F.3d 329, 336–37 (2d Cir. 1998); *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir.1998); *Brooks v. DiFasi*, 112 F.3d 46, 48–49 (2d Cir.1997).

Although there is no bright-line rule regarding the length or type of sanction that would give rise to an "atypical and significant hardship," this standard will not be met unless the disciplinary and administrative sanctions are onerous. *See Sandin*, 515 U.S. at 486, 115 S.Ct. 2293 (30 days' disciplinary segregation did not constitute atypical, significant hardship); *Scott v. Albury*, 156 F.3d 283, 287 (2d Cir.1998) (per curiam); *Arce*, 139 F.3d at 337 (collecting cases).

■ A plaintiff's inability to meet the *Sandin* standard, properly raised by a defendant on a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., is not, however, the sole defense that a defendant may raise to a conditions of confinement claim under § 1983. Because, under the PLRA, a prisoner must exhaust administrative remedies before filing a § 1983 suit and, in the case of suits seeking damages for mental or emotional injuries, make a prior showing of physical injury, a defendant in

a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements.

Here, the district court did not consider the application of *Sandin* because it found that Jenkin's claims were barred under *Heck* and *Edwards*. We therefore remand the case to the district court for consideration of whether Jenkins has stated a claim for a deprivation of procedural due process within the requirements of *Sandin*, as well as any other appropriate affirmative defenses.

## CONCLUSION

The judgment of the district court is vacated and we remand the case for further consideration. Defendant-appellee shall bear costs of this appeal.