Chief Judge JACOBS dissents in a separate opinion.
CALABRESI, Circuit Judge:
In June 1998, plaintiff-appellant Marcos Poventud was convicted of attempted murder in the second degree, attempted robbery in the first degree, assault in the first degree, and criminal possession of a weapon in the second degree. He was sentenced to 10 to 20 years in prison. Po-ventud ultimately succeeded in having his conviction vacated, but the prosecution appealed, and Poventud was denied bail. Rather than await a new trial in custody, Poventud pled guilty to a lesser charge for which the penalty was a one-year sentence — a jail term that Poventud had already served.
In May 2007, Poventud brought the instant action under 42 U.S.C. § 1983, alleging Brady violations against the officials who conducted his original investigation and prosecution. In July 2009, Poventud stayed this proceeding pending the outcome of a state-court motion to invalidate his guilty plea. Poventud later withdrew the state motion without prejudice and resumed this suit. In June 2011, defendants moved for summary judgment. The District Court (Batts, J.) granted the motion in March 2012, ruling that Poventud’s § 1983 claims are barred under Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). See Poventud v. City of New York, No. 07 Civ. 3998(DAB), 2012 WL 727802, at *3 (S.D.N.Y. Mar. 6, 2012).
We disagree. Because Poventud is no longer in custody, and therefore can no longer bring a federal habeas suit, Heck's narrow exception to § 1983’s otherwise broad coverage does not apply. Poventud may bring suit under § 1983 regardless of any defenses which might arise based on his subsequent guilty plea to the lesser charge. Accordingly, we vacate the District Court’s decision granting summary judgment and remand for further proceedings.
BACKGROUND
The parties dispute various points in the factual record. When, as here, we review a grant of summary judgment dismissing a complaint, “we construe the evidence in the light most favorable to the plaintiff, drawing all reasonable inferences and resolving all ambiguities in his favor.” Colavito v. N.Y. Organ Donor Network, Inc., 438 F.3d 214, 217 (2d Cir.2006).
In March 1997, Younis Duopo was robbed and shot in the head or neck by two men sitting in the back seat of a livery cab that Duopo was driving through the Bronx. Later, Frankie Rosado, a detective, found a wallet on the floor of the cab by the front passenger seat. Somehow the NYPD Crime Scene Unit had missed the wallet. The wallet contained a pair of old photo I.D. cards belonging to Francisco Poventud, brother of the plaintiff-appellant. When investigators showed Duopo a photo array containing one of the photos of Francisco Poventud (who allegedly looks nothing like his brother), Duopo positively identified it as a picture of his assailant. At the time, however, Francisco Poventud was incarcerated and could not possibly have committed the crime. Detectives then showed Duopo photo arrays containing a picture of Marcos Poventud. Only upon seeing Marcos’s photo for the fourth time did Duopo identify Marcos as the shooter. Marcos was arrested, identified (by Duopo) at a line-up, and indicted, along *59 with a co-defendant, Robert Maldonado, whom Duopo also identified. Investigators left no record of the false identification of Francisco Poventud; they also did not disclose it to defense counsel or to the Bronx County prosecutors; and they did not preserve the photo array.
Marcos Poventud learned all of this only during the 2003 retrial of Robert Maldonado. In December 2004, Poventud filed a motion under N.Y. C.P.L. § 440.10 to vacate his conviction on the ground that the prosecution withheld exculpatory evidence. The New York Supreme Court for Bronx County granted this motion in October 2005. The prosecution filed a notice of appeal; successfully argued that Poventud be denied bail; and offered him immediate release in exchange for a guilty plea to a non-violent, Class E felony charge of third-degree attempted robbery. By this time, Poventud had been incarcerated for nearly nine years. Poventud testifies that during his imprisonment he endured gruesome and repetitive physical and sexual abuse; that he attempted suicide; and that he suffered from depression and post-traumatic stress disorder. In January 2006, Poventud accepted the terms of the plea bargain and went home.
Poventud now contends that he was deceived into pleading guilty. He alleges that the assistant district attorney knew, but did not disclose, that the district attorney’s office had decided not to perfect its appeal. Poventud alleges further that the ADA withheld crucial information from the defense. When he learned of these omissions, Poventud stayed the instant federal suit and moved in state court to have his guilty plea vacated as involuntarily given. The New York Supreme Court for Bronx County granted an evidentiary hearing on the question of voluntariness, but Poven-tud withdrew his motion without prejudice. He says he did this after learning that he had multiple myeloma, after nearly dying from kidney failure, and after undergoing bone and stem cell transplants and chemotherapy. Poventud asserts that he thought the stress and infection risks of a new trial, together with the possibility, however remote, of returning to jail, would kill him. After withdrawing his state motion, Poventud resumed this federal action under 42 U.S.C. § 1983, in which he alleges violations of his federal due process and fair trial rights under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He also sues the City of New York for failing properly to train its officers.
The district court found that, because plaintiffs guilty plea was to conduct that “necessarily required his presence at the scene of the crime,” success on a § 1983 claim arising out of the suppression of evidence relevant to his alleged misidenti-fication would “logically imply the invalidity” of his guilty plea. Poventud, 2012 WL 727802, at *3. This being so, the court continued, Poventud could survive summary judgment under Heck only by showing “that the challenged conviction has been reversed, expunged, invalidated, or called into question.” Id. Poventud could do none of this, the court concluded, either as to his first conviction or to his guilty plea. Moreover, Poventud’s “decision not to pursue in the state court an available remedy by which he could invalidate his [guilty plea] does not relieve him of his obligation to demonstrate its invalidity if he is to avoid the bar established in Heck.” Id. at *4. The district court granted defendants’ motion for summary judgment, and this appeal followed.
DISCUSSION
We review grants of summary judgment de novo. See Anemone v. Metro. Transp. Auth., 629 F.3d 97, 113 (2d Cir.2011).
*60 We conclude that Heck does not bar Poventud’s § 1983 claims. Under the law of this Circuit, a plaintiff asserting the unconstitutionality of his conviction or incarceration must have access to a federal remedy. Normally that remedy is through a § 1983 action. If, however, the plaintiff is in custody, Heck may apply and require that the plaintiff assert his claim first in a habeas petition. As Poventud is no longer in custody, Heck does not bar his claims under § 1983. The district court erred, then, in granting summary judgment against him on the basis of Heck. The law of this Circuit in this matter derives from the interplay of two Supreme Court decisions: Heck v. Humphrey itself, and the subsequent Spencer v. Kemna, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998).
Heck and Spencer
The petitioner in Heck was a state prisoner who sought relief under § 1983. Earlier, Heck had twice sought and failed to secure relief under the federal habeas statute. In upholding the dismissal of Heck’s § 1983 claims, the Supreme Court held that when the success of a § 1983 claim would “necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement,” the complaint must be dismissed unless the plaintiff can “prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court’s issuance of a writ of habeas corpus.” Heck, 512 U.S. at 486-87, 114 S.Ct. 2364. In other words, the Court continued,
when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.
Id. at 487, 114 S.Ct. 2364. This statement tracked the fact pattern in Heck, which involved “a state prisoner” — that is, someone still in custody. In a footnote, and in dicta, the Court suggested, however, that the rule should similarly apply to plaintiffs no longer in custody: “We think the principle barring collateral attacks ... is not rendered inapplicable-by the fortuity that a convicted criminal is no longer incarcerated.” Id. at 490 n. 10, 114 S.Ct. 2364.
In a concurrence, Justice Souter, joined by three colleagues, expressed reservations about denying relief to plaintiffs seeking damages under § 1983 for unconstitutional convictions or imprisonment who, because they were no longer imprisoned, could have no relief under habeas. Extending Heck’s favorable termination requirement to plaintiffs not in custody, Justice Souter wrote, would “deny any federal forum for claiming a deprivation of federal rights to those who cannot first obtain a favorable state ruling.” Id. at 500, 114 S.Ct. 2364 (Souter, J., concurring). A better way to read the majority’s opinion is “as saying nothing more than that now, after enactment of the habeas statute and because of it, prison inmates seeking § 1983 damages ... must satisfy a ... favorable-termination requirement.” Id. (emphasis added).
Four years after Heck, Justice Souter repeated these views in another concurrence. Spencer, 523 U.S. at 18-21, 118 S.Ct. 978 (Souter, J., concurring). This time he was joined by four Justices. Three joined Justice Souter’s concurrence, which stated (again in dicta, as the case ultimately turned on other grounds) “that a former prisoner, no longer ‘in custody,’ may bring a § 1983 action establishing the *61 unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy.” Id. at 21, 118 S.Ct. 978.[1] And Justice Stevens, in dissent, went out of his way to adhere to Justice Souter’s position. Id. at 25 n. 8, 118 S.Ct. 978 (Stevens, J., dissenting).

The Law of the Circuit

Our Court has adopted Justice Souter’s dicta in Spencer. In Jenkins v. Haubert, we reversed the dismissal of a former inmate’s § 1983 challenge to the validity of two prison disciplinary hearings. 179 F.3d 19 (2d Cir.1999). We held that “a § 1983 suit by a prisoner ... challenging the validity of a disciplinary or administrative sanction that does not affect the overall length of a prisoner’s confinement is not barred by Heck.” Id. at 27. To hold otherwise, we noted, “would contravene the pronouncement of five justices that some federal remedy — either habeas corpus or § 1983 — must be available.” Id. (emphasis added). In Leather v. Eyck, decided the same day as Jenkins, we held that Heck did not bar the § 1983 suit of an arrestee who was convicted (but fined rather than imprisoned) for driving while impaired. 180 F.3d 420 (2d Cir.1999). “Because Leather is not and never was in the custody of the State,” we explained, “he, like Jenkins, has no remedy in habeas corpus. Having escaped the jaws of Heck, Leather should therefore be permitted to pursue his § 1983 claim in the district court.” Id. at 424.
Since Jenkins and Leather, we have repeatedly affirmed that Heck’s favorable-termination requirement applies only to plaintiffs who are in custody, and that all other claimants — those who have no remedy in habeas — may pursue their claims under § 1983. See McKithen v. Brown, 481 F.3d 89, 101 (2d Cir.2007) (“Over time, [Heck’s ] implicit exception [to § 1983’s otherwise broad coverage] has been carefully circumscribed.”); Huang ex rel. Yu v. Johnson, 251 F.3d 65, 75 (2d Cir.2001) (“In light of our holding in Leather, and in light of ... the fact that the Spencer concurrences and dissent ‘revealed that five justices hold the view that, where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be,’ we conclude that Huang’s Section 1983 claim must be allowed to proceed.”) (quoting Jenkins, 179 F.3d at 26); Green v. Montgomery, 219 F.3d 52, 60 n. 3 (2d Cir.2000) (“We have held ... that Heck acts only to bar § 1983 suits when the plaintiff has a habeas corpus remedy available to him (i.e., when he is in state custody). Because it does not appear that Green is presently in state custody, his § 1983 action is not barred by Heck.” (internal citations omitted)).
The facts in this case differ somewhat from the facts in the cases just cited, but not in a way that is material to the issue before us. After Poventud’s original conviction was vacated, but before that vaca-tur was affirmed on appeal, Poventud pled guilty to a lesser, related offense.[2] This *62 fact, however, does not alter the underlying principle that a claimant who cannot seek relief under habeas must be able to seek it under § 1983. Poventud’s guilty plea may (or may not) supply defendants with a defense that no .§ 1983 violation occurred. But it does not entitle them to summary judgment under Heck.
To repeat, the law of this Circuit makes clear that a plaintiff alleging civil rights violations in connection with his conviction or imprisonment must have access to a federal remedy either under habeas or under § 1983. Because Poventud is not in custody, he has no remedy under habeas. He must be able, therefore, to pursue relief under § 1983.
CODA
We would end here, but for the apocalyptic tone of the dissent, which requires a brief answer. Among its many flaws are the following.
First. Contrary to the dissent’s assertion, the majority does not rely principally on Leather. It relies at least as much on Jenkins. It does so because Jenkins, an opinion written by Judge Walker and concurred in by Judge Miner and Judge Sack,[3] most clearly embraced, and most thoroughly recited the history behind, the proposition that we reaffirm today: “that some federal remedy — either habeas corpus or § 1983 — must be available.” 179 F.3d at 27. To be sure, the panel in Jenkins also had other grounds for its decision. Id. (“We do not rest our holding solely on our tally of votes' on the [Supreme] Court for Justice Souter’s view of Heck.”). And it is true, as the dissent points out, that Jenkins dealt with prison discipline rather than a conviction. But that, for purposes of the case before us, is a distinction without a difference. The court in Jenkins did not limit its endorsement of Justice Souter’s position to the facts before it. It stated that endorsement as a general proposition and,, having done so, made it one basis for its holding.
It is significant, moreover, that Jenkins and Leather (which dealt with an actual criminal conviction, and not only with conditions of confinement) came down the same day. As is well known, the normal practice, when two panels are dealing with closely related issues at the same time, is for the panels to communicate with each other to ensure, if at all possible, that the opinions are consistent. One can therefore assume that, together, Jenkins and Leather reflected the law of the Circuit at the time, and that the law was, as Jenkins stated it, “.that some federal remedy—either habeas corpus or § 1983—must be available.” 179 F.3d at 27. Significantly, within a year, this view was affirmed again in Green v. Montgomery, which stated that “Heck acts only to bar § 1983 suits when *63 the plaintiff has a habeas corpus remedy available to him (i.e., when he is in state custody).” 219 F.3d at 60 n. '3 (Kearse, J.; Calabresi Katzmann, J.). Less than a year after Green, this position was stated yet again in Huang v. Johnson, 251 F.3d at 75 (“In light of our holding in Leather, and in light of both the Spencer majority’s dictum and the fact that the Spencer concurrences and dissent ‘revealed that five justices hold the view that, where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be,’ Jenkins, 179 F.3d at 26, we conclude that Huang’s Section. 1983 claim must be allowed to proceed.”) (Feinberg, J.; Winter, J.; Cabranes, J.).
Within a period of two years, then, four unanimous panels of the Second Circuit; including a majority of active judges sitting throughout that time,[4] affirmed the position of the Circuit that Heck’s bar on § 1983 relief applies only when federal relief can be sought under habeas. These panels so ruled because, as the Jenkins Court noted, to do otherwise “would contravene the pronouncement of five justices that some federal remedy — either habeas corpus or § 1983 — must be available.” 179 F.3d at 27. And this is the principle the majority follows today. Indeed, this position is so clearly the current law of the Circuit that the majority considered this case a candidate for disposition by summary order on this ground only, rather than on the alternate ground discussed below.
Second. The dissent suggests, nonetheless, that Jenkins, Leather, Green, and Huang — and the jüdges who participated in those three decisions — flew in the face of a Supreme Court holding that remained the law despite subsequent Supreme Court dicta to the contrary. If that were true, these opinions would have been wrong,[5] and one would have expected that fact to have been raised at the time. The Supreme Court in Heck deeidéd a case in which habeas was available. In dicta, in a footnote, which was completely unnecessary to the decision in Heck, there is language suggesting that the holding might well be extended to a future case where habeas was not available. Heck, 512 U.S. at 490 n. 10, 114 S.Ct. 2364. It was to distance himself from this dicta that Justice Souter wrote his concurrence. And, when one of the Justices who had joined the Heck footnote changed her mind, see Spencer, 523 U.S. at 21, 118 S.Ct. 978 (Ginsburg, J., concurring), it became clear that the Heck dicta no longer commanded the support of a majority of Supreme Court Justices.
In such circumstances — i.e., where there is no Supreme Court holding in one direction, and there are powerful statements by a majority of the Justices in an opposite direction — it is perfectly appropriate (though not required) for a lower court to *64 embrace the position adopted (albeit in dicta) by that majority. This is precisely what the panels in Jenkins, Leather, Green, and Huang did.
Third. The dissent claims that in doing this, the Jenkins, Leather, Green, and Huang Courts improperly altered the law of the Circuit without going in banc. There is no need, however, to discuss today what the Circuit law was before the Supreme Court decided Heck and Spencer. For, even assuming, very much, arguendo that the dissenter is correct as to our Circuit’s pre-Heck law,[6] it is readily accepted that a panel of this Court may depart from a prior decision when that earlier decision’s “rationale is overruled, implicitly or expressly, by the Supreme Court.”' In re Sokolowski, 205 F.3d 532, 535 (2d Cir.2000) (per curiam) (internal quotation marks omitted). As far as we can determine, our Court has not clearly decided whether such undermining must happen in a holding by the Supreme Court, or whether clear dicta also suffices.[7] In any event, had anyone cared to disagree with Jenkins or Leather or Green or Huang on the ground that they deviated from prior holdings, the time to say so was when those four cases were decided. Accordingly, one would have expected a request for in banc reconsideration at that time. There was no such request, which comes as no surprise given the unanimity of support in those cases for the position we reaffirm today. The dissenter obviously disagrees, as is his right, with the position our Court then took. But, given those holdings, we would think it preferable for the dissent to state that disagreement by concurring in today’s result and expressing distaste for the settled law that requires such a concurrence.
Fourth. Quite apart from whether the absence of habeas, by itself, means that a § 1983 action may lie, the dissent is incorrect in its statement that this § 1983 action calls into question Poventud’s second conviction. It does nothing of the sort. It asserts that his constitutional rights were violated by the state through a Brady *65 violation. Under Heck, this could not have been brought up prior to the quashing of his first conviction because a finding of a Brady violation would undercut that conviction. But once that conviction was quashed, the Brady violation — if one were established, and if it injured Poventud— would constitute an independent infringement of Poventud’s constitutional rights, regardless of his subsequent conviction.
To give a dramatic example: suppose a defendant is tortured viciously, confesses, and is convicted on the basis of that confession. Under Heck, he cannot, while in jail on that conviction, bring a § 1983 action for being tortured because that would undercut the conviction. But once his conviction is quashed (through habeas or in other ways), he is free to assert that he was tortured and seek a § 1983 remedy. Does the dissent really believe that this becomes less true if that defendant later freely confesses, even to the same crime? At that point, the claim for damages for torture in no way undercuts the second, and only existing, conviction and hence is in no way barred by Heck.
At core, this is what Poventud claims today. He seeks damages for the harm caused by a Brady violation in connection with his first (invalidated) conviction; he makes no claims at all with respect to his second (outstanding) conviction. See Appellant’s Br. 32 (“Seeking damages only for punishment he suffered in excess of the one-year imprisonment he accepted as part of his plea, the lawsuit, if successful, would not be inconsistent with that plea.”). As noted earlier, whether there was such a violation, and whether there were such damages, will be determined in a § 1983 trial. But whatever the result of that trial, Poventud’s subsequent guilty plea is not undermined by his § 1983 action.
Finally, the dissent makes the extraordinary argument that habeas might be available to Poventud because his “inability to bring a § 1983 action alone may constitute a collateral consequence sufficient to overcome a mootness challenge and support a ... post-release habeas petition.” This argument, which has not been made by anyone in this case, is circular. It posits a result — the unavailability of § 1983 relief — and on the basis of that result creates the premise for that result. It is, in short, absolutely Ptolemaic in the uselessness of its epicycles.
CONCLUSION
For the foregoing reasons, we VACATE the district court’s judgment and REMAND the case to the district court for further proceedings consistent with this opinion.

. Between Heck and Spencer, Justice Ginsburg revised her view of the matter. See Spencer, 523 U.S. at 21, 118 S.Ct. 978 (Ginsburg, J., concurring) ("I have come to agree with Justice SOUTER’s reasoning: Individuals without recourse to the habeas statute because they are not ‘in custody’ (people merely fined or whose sentences have been fully served, for example) fit within § 1983’s broad reach.”) (internal quotation marks omitted).

. Although we think it unnecessary to reach the issue in light of our conclusion that Heck’s bar does not apply to a § 1983 plaintiff who is not in custody, even if Heck did apply, we are doubtful that success on Poventud’s § 1983 suit would "necessarily imply the invalidity,” Heck, 512 U.S. at 487, 114 S.Ct. 2364, of his *62 subsequent guilty plea. The alleged Brady violation resulted in a conviction that was later vacated. Because that conviction was vacated — regardless of whether Poventud then pled guilty or was retried' — victory in his § 1983 suit would no longer implicate the validity of an outstanding criminal judgment. See Smith v. Gonzales, 222 F.3d 1220, 1222 (10th Cir.2000); Davis v. Zain, 79 F.3d 18, 19 (5th Cir.1996) (per curiam). Moreover, Po-ventud’s § 1983 suit cannot call into question the validity of his guilty plea, inasmuch as it is undisputed that at the time he pled guilty Poventud was aware of the Brady violation on which his present lawsuit is based. See Smith, 222 F.3d at 1222 (where conviction was vacated and case remanded due to Brady violation, success on plaintiff's § 1983 suit had no relevance to a later criminal trial, since the prosecution could not withhold the same exculpatory evidence at a subsequent trial).

. We mention the names of individual judges only because the dissent goes out of its way to do so.

. That is, seven active judges (Judges Kearse, Walker, Calabresi, Cabranes, Straub, Sack, and Katzmann) out of thirteen. Judge Winter, who served as Chief Judge when Jenkins, Leather, and Green were decided, had assumed senior status before writing the panel opinion in Huang.

. This was not always necessarily so, see W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 642, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) (affirming a district court decision that parted with clear Supreme Court precedent in the belief that the Supreme Court would now decide the matter differently), but it is so now, see Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.”).

. We note that thé two Second Circuit decisions — Roesch v. Otarola, 980 F.2d 850 (2d Gir.1992) and Singleton v. City of New York, 632 F.2d 185 (2d Cir.1980) — that the dissent adduces for the proposition that our pre-Heck cases did not turn “on whether the plaintiff was incarcerated or at liberty when suit was filed,” both involved § 1983 claims sounding in malicious prosecution. Of course these cases didn't turn on whether the plaintiff was in or out of custody. They turned on the fact that favorable termination is an element of malicious prosecution. These decisions did not anticipate Heck; they simply applied an old common law rule from which the Heck majority drew a controversial analogy. Whatever the vices of the Jenkins-Leather-Green-Huang line of cases, we do not think that even so hardened a foe as the dissenter can accuse them of straying from the notion that a claim must be dismissed if one- of its elements — i.e., favorable termination in malicious prosecution suits — is missing. The dissent also cites two cases — Amaker v. Weiner, 179 F.3d 48 (2d Cir.1999), and Channer v. Mitchell, 43 F.3d 786 (2d Cir.1994) (per cu-riam) — that were not malicious prosecution cases, but were cases in which the petitioner was' still incarcerated and could bring habeas. The bar on § 1983 suits in those circumstances, of course, continues to apply.

. In one case, in which the Supreme Court had suggested a certain direction in dicta but then explicitly left the question open, we concluded that "the Supreme Court's dicta do not outweigh prior circuit authority.” Meacham v. Knolls Atomic Power Lab., 381 F.3d 56, 70 (2d Cir.2004), rev’d on other grounds by KAPL, Inc. v. Meacham, 544 U.S, 957, 125 S.Ct. 1731, 161 L.Ed.2d 596 (2005). As a general matter, however, “[w]e have also observed that we may depart from a prior decision when it merely 'has been called into question by an intervening United States Supreme Court decision.’ " Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc., 423 F.3d 90, 101 n, 12 (2d Cir.2005) (quoting Meacham, 381 F.3d at 69).