**Calvin DALLAS, Plaintiff,**

v.

**Janis GOLDBERG, Investigator, N.Y.S. Police, and Gregory Harlin, Senior Investigator, N.Y.S. Police, Defendants.**

**No. 95 CIV. 9076 (LTS) (RLE).**

United States District Court,
S.D. New York.

May 7, 2001.

Chadbourne & Parke LLP by Beth D. Diamond, Thomas Freedman, David Gallai, New York City, for Plaintiff.

Elliot Spitzer, Attorney General of the State of New York by Susan H. Odessky, Assistant Attorney General, New York City, for Defendants.

## OPINION & ORDER

SWAIN, District Judge.

Plaintiff Calvin Dallas ("Plaintiff" or "Dallas") brings this action against defendants Janis Goldberg ("Goldberg") and Gregory Harlin ("Harlin") (collectively, "Defendants") pursuant to 42 U.S.C. § 1983 ("Section 1983"). Plaintiff alleges that Defendants violated his federal civil rights when, on September 18, 1994, they arrested him for possession of drugs. Plaintiff also alleges that he was thereafter prosecuted maliciously for illegal possession of drugs with intent to sell and that Defendants abused judicial process in connection with the criminal charges. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

Before the Court is the motion of Defendants, brought pursuant to Rule 42(b) of the Federal Rules of Civil Procedure ("Rule 42(b)"), seeking bifurcation of the trial of the issues of liability and damages. Also before the Court are Plaintiff's motions seeking to: (1) preclude Defendants' introduction at trial of evidence relating to alleged drug paraphernalia found in Plaintiff's residence after Plaintiff's arrest; and (2) preclude Defendants from introducing at trial evidence of Plaintiff's convictions. The parties have also raised the issue of whether Plaintiff is entitled to seek to recover damages in respect of his incarceration, following the arrest and interposition of drug charges at issue here, for violation of parole.

For the reasons set forth below, Defendants' motion to bifurcate is denied, Plaintiff's preclusion motions are granted, in part, in respect of the alleged drug paraphernalia, decision is reserved as to the admissibility of Plaintiff's prior convictions, and Plaintiff will not be permitted to seek damages in respect of the parole violation incarceration.

### PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Two motions for summary judgment have previously been adjudicated in this action. Familiarity with the Court's opinions on those motions, which detail most of the relevant background facts, is presumed. By opinion dated November 20, 1997, the Court granted summary judgment in favor of all defendants other than Goldberg and the New York State Police ("NYSP") with respect to all of the claims asserted in Plaintiff's original complaint. Plaintiff's claims against defendant Goldberg for false arrest and malicious prosecution, and Plaintiff's claims against

the NYSP, survived the motion.[1] *Dallas v. Goldberg*, 95 Civ. 9076, 1997 WL 728153 (S.D.N.Y. Nov. 20, 1997) (Cote, J.) (*"Dallas I"*).

By opinion dated August 4, 2000, the Court granted in part a summary judgment motion directed to Plaintiff's amended complaint. Plaintiff's claim of unlawful search and seizure was dismissed, as was his cause of action against defendant Goldberg for false arrest. The motion was denied with respect to all other claims and all other defendants. *Dallas v. Goldberg*, No. 95 Civ. 9076, 2000 WL 1092986 (S.D.N.Y. Aug. 4, 2000) (Pauley, J.) (*"Dallas II"*). Dallas's surviving causes of action are claims of malicious prosecution and abuse of the legal process against both Defendants, and a claim of false arrest against defendant Harlin. *See Dallas II*, 2000 WL 1092986.

### Discussion

#### Bifurcation

Under Rule 42(b) of the Federal Rules of Civil Procedure the Court, in its discretion, can bifurcate the trial of an action for "convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed. R.Civ.P. 42(b). The decision to bifurcate a trial rests within the sound discretion of the trial court. *See Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 283 (2d Cir. 1990); *Agron v. Trustees of Columbia Univ.*, No. 88 Civ. 6294, 1997 WL 399667 at *1 (S.D.N.Y. July 15, 1997). Although bifurcation of trials is not unusual and may under appropriate circumstances be the preferred method, bifurcation remains the exception rather than the rule. *See Lewis v. Triborough Bridge*, No. 97 CIV. 0607, 2000 WL 423517 at *2 (S.D.N.Y. Apr. 19, 2000); *Agron*, 1997 WL 399667 at *1; *Kerman v. City of New York*, No. 96 Civ. 7865, 1997 WL 666261 at *5 (S.D.N.Y. Oct. 24, 1997).

The application of Rule 42(b) does not lend itself to a bright-line test but, rather, requires case-by-case analysis. *See Monaghan v. SZS 33 Associates*, 827 F.Supp. 233, 245 (S.D.N.Y.1993). Factors that courts consider in determining whether bifurcation is appropriate include: (1) whether the issues are significantly different from one another; (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary and testimonial evidence on the issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is granted. *See Lewis*, 2000 WL 423517 at *2; *Reading Indus., Inc. v. Kennecott Copper Corp.*, 61 F.R.D. 662, 664 (S.D.N.Y.1974). The party seeking bifurcation bears the burden of establishing that bifurcation is warranted. *See Lewis*, 2000 WL 423517 at *2.

Here Defendants offer nothing to justify bifurcation other than generalized assertions that the punitive damages phase of a trial should be separated from the liability and compensation phases thereof, and that bifurcation would obviate any prejudice that could accrue to Defendants from the exposure of financial evidence during the liability phase of a trial. Defendants fail to identify any pressing or unusual circumstances that warrant bifurcation in the instant case and do not address how bifurcation would promote judicial economy. Nor do Defendants identify the financial information they intend to proffer or explain how that evidence would

---

1. Plaintiff was given a limited period of time in which to effect service upon the NYSP. Plaintiff's claims against the NYSP were dismissed without prejudice in January 1998.

be prejudicial with respect to liability. *Cf. Simpson* 901 F.2d at 280, 283 (finding that the district judge "acted well within his discretion in denying bifurcation" where, *inter alia,* movant "made no detailed offer of proof to indicate the need for bifurcation."); *see also Kerman,* 1997 WL 666261 at *5 (denying motion to bifurcate liability and damages phases of the trial where moving party failed to present particular factors to distinguish potential prejudice from that which is normally dealt with through an appropriate charge and curative instructions).

Plaintiff, on the other hand, urges that judicial economy would not be served by bifurcation, and that Plaintiff would be prejudiced "[b]ecause the standard of conduct necessary to establish punitive damages overlaps with Defendants' state of mind in each of the [Section] 1983 claims, and because the same facts and witness testimony will be required to prove each of these issues." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion ("Pl.Memo") at 3.) Defendants do not dispute the overlapping nature of the relevant evidence.

Defendants have failed to sustain their burden with respect to the propriety of bifurcation. Their motion for a bifurcated trial is, accordingly, denied. The Court will, however, give an appropriate limiting instruction with respect to the jury's consideration of evidence concerning Defendants' finances if they so request. By May 14, 2001, the parties shall make a written joint submission to the Court including any proposed or agreed upon Request to Charge on this subject; to the extent separate proposed charges are submitted, the parties' joint submission shall explain precisely the nature of the outstanding dispute.

## ALLEGED DRUG PARAPHERNALIA

After plaintiff Dallas was arrested on September 18, 1994, police officers searched his residence and found numerous items alleged to be drug paraphernalia, including a CD case, a prescription bottle, aluminum foil, plastic caps, a Proventil inhalation aerosol canister, paper, string, two metal rods and 25 small plastic bags containing residue that, according to Defendants, tested positive for cocaine. Plaintiff moves to exclude testimony concerning this evidence from trial, asserting that: (1) it is inadmissible to establish probable cause because it was found after Dallas's arrest; and (2) it is inadmissible to impeach Dallas because it has no probative value and is unduly prejudicial. At oral argument on the instant motions Plaintiff's counsel asserted, and Defendants did not dispute, that the physical evidence seized from Plaintiff's residence is no longer available. Plaintiff's current counsel assert that they never had access to that physical evidence.

Defendants contend that the alleged drug paraphernalia is relevant within the meaning of Rule 401 of the Federal Rules of Evidence with respect to Plaintiff's false arrest claim. They further assert that the evidence is admissible under Rule 404(b), which permits the admission of evidence of other crimes, wrongs and acts under certain circumstances. In addition, Defendants argue that the evidence is admissible for impeachment purposes if Plaintiff testifies and denies that he participated in drug activity.

*Relevance of the evidence; Rule 403(b); legality of search*

█ Defendants will argue at trial that Harlin had probable cause to arrest Plaintiff, which, if proven, is a complete defense to a charge of false arrest. *See Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). Defendants assert that the evidence of al-

leged drug paraphernalia is relevant to the determination of whether the arresting officer had probable cause to arrest Plaintiff on the night of September 20, 1994. Although they acknowledge that Plaintiff was taken into custody prior to the search of his residence and the seizure of the items, Defendants nonetheless argue that the evidence should be weighed in the probable cause determination because defendant Harlin did not decide the particulars of the criminal charges to be brought against Plaintiff until after the search. Defendants assert that Harlin's post-arrest deliberations are relevant to the question of probable cause for the arrest because a charge of criminal possession of the items was considered. (Defts.' Memo of Law in Opp. to Pl.'s Motions *in Limine* and Pretrial Memo on Damages ("Defts.' Memo"), *passim.*)

Defendants acknowledge that "[t]here is no question that the existence of probable cause depends upon a consideration of 'those facts available to the officer at the time of arrest and immediately before it.'" (Defts.' Memo at 12–13, quoting *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 569 (2d Cir.1996).) *Accord Martinez v. Simonetti,* 202 F.3d 625, 635 (2d Cir.2000); *Bowman v. City of Middletown,* 91 F.Supp.2d 644, 657 (S.D.N.Y.2000); *Pichardo v. New York Police Dep't,* No. 98 Civ. 429, 2000 WL 776922 at *2 (S.D.N.Y. June 14, 2000); *Dallas I,* 1997 WL 728153 at *4. Generally, probable cause to arrest exists when officers "'have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."' *Dallas II,* 2000 WL 1092986 at *4, (quoting *Weyant,* 101 F.3d at 852).

■ Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Evidence of which the arresting officer had no knowledge at the time the challenged arrest occurred[2] is clearly irrelevant to a determination of whether the officer had probable cause to make the arrest. The alleged drug paraphernalia is therefore irrelevant to the question of probable cause to make the arrest—regardless of what charges were considered post-arrest and what charges were eventually brought against Plaintiff—and evidence concerning it is inadmissible for the purpose of proving the existence of such probable cause. *See Dallas II,* 2000 WL 1092986 at *5 (discussing whether genuine issues of material fact exist on the question of probable cause and observing without comment that "Plaintiff also notes that the drug paraphernalia found in his apartment was seized after his arrest, and therefore cannot enter the probable cause equation.").

Even if relevance had been shown, the Court would still have been obliged under Rule 403(b) to weigh its probative value against the danger of unfair prejudice, confusion of the issues, and misleading the jury, among other considerations. Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of, *inter alia,* unfair prejudice. The Court finds that any probative value that evidence of the drug paraphernalia might have with respect to the issue of probable cause to make the arrest is substantially outweighed by the danger of unfair prejudice to the Plaintiff. The issue that the jury must determine is whether

---

**2.** As Judge Pauley noted in *Dallas II,* "[a]n arrest occurs when an individual is restrained and his freedom of movement is restricted." *Dallas II,* 2000 WL 1092986 at *6.

Harlin had probable cause to arrest Plaintiff, who was subsequently charged with drug possession. Informing the jury that drug paraphernalia was later found in Plaintiff's residence could lead the jury to weigh that fact in making a determination that must, as a matter of law, focus on the arresting officer's state of knowledge at the time of the arrest. Such consideration would clearly be unfairly prejudicial to the Plaintiff.

■ Defendants also assert that the evidence should be admitted because it was recovered in connection with a lawful search and seizure. *See Dallas II*, 2000 WL 1092986 at *8. The lawfulness of the seizure does not render the evidence admissible on an issue with respect to which it is irrelevant and lacking in probative value.

*Admissibility under Rule 404(b) to show absence of mistake*

■ Defendants next assert that evidence regarding the drug paraphernalia is admissible in connection with Plaintiff's false arrest claim under Rule 404(b) of the Federal Rules of Evidence. Defendants argue that, because Plaintiff claims that his arrest "was entirely false" and "that the arrest was a mistake," evidence of drug paraphernalia found in his apartment is admissible to show absence of "mistake." (Defts.' Memo at 14–15.) Rule 404(b) precludes the admission of evidence of other crimes, wrongs, or acts to prove the character of a person to show action in conformity therewith, but allows its admission for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Fed.R.Evid. 404(b).

Defendants' argument stands Rule 404(b) on its head. They seek to use the subsequently-discovered evidence to show that it was likely, at the time of the arrest, that Plaintiff possessed drugs and that defendant Harlin therefore was not mistaken about that likelihood when Plaintiff was arrested. Because the existence of probable cause depends on the information, facts and circumstances available to the arresting officer at the time of arrest, evidence discovered after the arrest is not admissible with respect to the question of whether there was probable cause. Defendants cannot get around the relevance requirement by arguing that their purpose in seeking to admit the evidence is to show absence of mistake, when the probable cause question is the central one.

■ Where there is no question of intent, evidence cannot be admitted to show absence of mistake. *See Hynes v. Coughlin*, 79 F.3d 285, 290–91 (2d Cir.1996). Here, Harlin's intent is not in question: clearly, he intended to arrest Plaintiff. Because there is no question with regard to Harlin's intent in arresting Plaintiff, evidence of subsequently discovered alleged drug paraphernalia cannot be admitted to show absence of mistake. *See id.* (holding that "where there is no tenable basis for contending that there was an issue such as intent or knowledge, it is error to admit [the evidence proffered to show absence of mistake]"). Furthermore, a cause of action for false arrest is not premised on a generalized notion that an officer "made a mistake" in arresting a person. Rather, the gravamen of the cause of action is absence of legal authority to make the challenged arrest. *See* BLACK'S LAW DICTIONARY 104 (7th ed.1999). There is no basis in Rule 404(b) for the admission of evidence of Dallas' alleged possession of drug paraphernalia to show Harlin's lack of mistake in arresting him.

*Admissibility for impeachment purposes*

■ Defendants, positing that Plaintiff may testify that he was not involved in

drug activity, also argue that testimony regarding the alleged drug paraphernalia should be permitted for impeachment purposes. It would be premature to rule on Defendants' request in advance of an actual proffer of testimony by Plaintiff. As the court noted in *Giles v. Rhodes,* a decision relied upon by Defendants, "[t]o make a ruling now would require [the Court] to speculate as to the nature of the testimony that might open the door to the proper admission of this evidence ...." No. 94 Civ. 6385, 2000 WL 1425046 at *2 (S.D.N.Y. Sept. 27, 2000). The Court will defer consideration of any impeachment proffer, and any additional evidentiary issues that may be implicated by such proffer, to the time of trial.

For the foregoing reasons, Plaintiff's motion to preclude Defendants' introduction of evidence regarding the alleged drug paraphernalia is granted, except to the extent such motion relates to the use of such evidence for impeachment purposes (as to which issue decision is reserved for trial).

### PRIOR CONVICTIONS

Plaintiff's prior felony convictions include: (1) one count of second degree burglary and one count of third degree burglary in 1987 (youthful offender); and (2) one count of second degree burglary in 1988, for which Plaintiff was sentenced to 3–9 years imprisonment (collectively, the "Prior Convictions"). Plaintiff's current incarceration is based on a 1997 conviction for two counts of burglary (the "Current Conviction"). Plaintiff moves to exclude evidence of all of these convictions, arguing that the Prior Convictions are inadmissible as too remote, and that the Current Conviction has very low probative value and is unduly prejudicial. At oral argument, Defendants confirmed that they do not oppose Plaintiff's motion as to the Prior Convictions; that element of the motion

is, accordingly, granted. As for the Current Conviction, the Court reserves decision until trial.

### DAMAGES FOR PAROLE VIOLATION INCARCERATION

In *Dallas II,* the Court (Pauley, J.) rejected Defendants' contention that Plaintiff's false arrest cause of action is barred by collateral estoppel based on the result of Plaintiff's final parole revocation hearing. *Dallas II,* 2000 WL 1092986 at *3. The Court also rejected Defendants' argument that Plaintiff's causes of action fail because Plaintiff has not satisfied the jurisdictional prerequisite defined for certain section 1983 actions by the Supreme Court in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). *Dallas II,* 2000 WL 1092986 at *3. The *Heck* Court held that,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus .... A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Heck,* 512 U.S. at 487, 114 S.Ct. 2364 (emphasis in original). In a footnote, Judge Pauley expressed a different view, however, with respect to Plaintiff's effort to recover damages for his parole revocation incarceration in connection with his false arrest, malicious prosecution and abuse of process causes of action:

> Although the parties did not brief the issue, it should follow that plaintiff can-

not recover damages arising from his incarceration for violating the conditions of his parole since the final revocation decision has never been overturned. *Cf.* Amended Compl. ¶¶ 71, 89, 96.[3]

*Dallas II,* 2000 WL 1092986 at *3 n. 2.

In light of the August 4, 2000 decision and in connection with their motions *in limine,* the parties have briefed the question of whether Plaintiff is entitled to seek damages in respect of Plaintiff's incarceration following the revocation of his parole. Plaintiff, characterizing the Court's footnote as *dicta,* contends that he is entitled to seek such damages in light of the Court's apparent rejection of Defendants' earlier *Heck v. Humphrey* argument. Defendants maintain that *Heck* bars any such damages claim. The matter was argued to the Court and briefed extensively.

The Court, having considered carefully the parties' arguments and the applicable law, has concluded that Plaintiff's pursuit of damages in respect of his parole violation incarceration is barred.

▇▇ The causes of action pleaded in the Amended Complaint do not implicate the validity of Plaintiff's parole revocation sentence. *Heck*'s analysis of the accrual of section 1983 claims implicating the validity of convictions is, as Judge Pauley previously found, thus inapplicable to them. Those causes of action do not, however, provide a viable legal basis for Plaintiff's damages claim with respect to the

parole violation sentence, and the latter claim clearly does implicate the validity of the revocation of parole. As explained below, Plaintiff cannot end-run the *Heck* bar by pleading such damages as consequential to other, narrower, alleged constitutional violations. Close examination of the elements and scope of the causes of action asserted in this now five-year-old lawsuit reveals that the parole revocation damages claim is outside the scope of the causes of action Plaintiff has asserted.

Plaintiff's false arrest claim can be made out (or may fail) without regard to the existence and outcome of the parole violation hearings. The elements of a claim for false arrest are that "(1) the defendant intentionally confined [the plaintiff]; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified." *Dallas II,* 2000 WL 1092986 at *2. "Once 'an arrest has occurred, its definition does not depend upon what follows, such as station house booking.'" *Id.* at *6 (citation omitted). *See also Heck,* 512 U.S. at 484, 114 S.Ct. 2364 ("'If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.'" (citation omitted)); *Singer v. Fulton County Sheriff,* 63 F.3d 110, 117 (2d Cir.1995) ("Typically, a warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in

---

**3.** Paragraph 71, which concludes the initial recitation of facts in the Amended Complaint, reads: "As a direct and proximate result of the foregoing willful and malicious conduct of the Defendants, Mr. Dallas was caused to be incarcerated for a violation of his parole." Paragraph 89 concludes the allegations supporting the third cause of action (Malicious Prosecution) and reads: "As a direct, proximate and foreseeable result of the foregoing malicious prosecution by each Defendant, Mr. Dallas was caused to be incarcerated on the

criminal complaint *and subsequently to have his parole revoked and to be sent back to prison.*" (Emphasis supplied.) Paragraph 96 concludes the allegations supporting the fourth cause of action (Malicious Abuse of Process) and reads: "As a direct, proximate and foreseeable result of the foregoing malicious abuse of process by each Defendant, Mr. Dallas was caused to be placed in custody, *was caused subsequently to have his parole revoked and was caused to be incarcerated.*" (Emphasis supplied.)

the tort of false arrest ..., while the tort of malicious prosecution will implicate post-arraignment deprivations of liberty." (citations omitted)). In that Plaintiff's false arrest cause of action implicates only the brief period from arrest to arraignment, damages for the parole violation proceeding, which was initiated by post-arrest violation notice and involved subsequent, separate proceedings, clearly are not recoverable on the basis of the false arrest claim.

Similarly, the allegations underlying Plaintiff's causes of action for malicious prosecution and abuse of process focus on the criminal charges that followed the arrest, rather than on the parole revocation proceedings. *See* Amended Complaint at ¶¶ 85–88, 92–94. Indeed they must, as favorable termination of the underlying judicial proceedings is a core element of a malicious prosecution cause of action. *See Singer,* 63 F.3d at 117–18. With respect to the latter cause of action, it appears that the only process allegedly issued by the Defendants was that relating to the criminal proceeding. *See Dallas II,* 2000 WL 1092986 at *8; Amended Complaint at ¶ 92. "Cognizable injury for abuse of process is limited to the harm caused by the misuse of process, and does not include harm (such as conviction and confinement) resulting from that process's being carried through to its lawful conclusion. Thus, one could no more seek compensatory damages for an outstanding criminal conviction in an action for abuse of process than in one for malicious prosecution." *Heck,* 512 U.S. at 486 n. 5, 114 S.Ct. 2364 The parole revocation proceedings, which resulted in a finding of parole violation and remand to custody, clearly did not terminate favorably for Plaintiff, thus vitiating any malicious prosecution claim predicated on those proceedings. The parole violation

finding and subsequent reincarceration are clearly outside the scope of the abuse of process cause of action as well.

That damages are recoverable on account of actions or events presupposes that they stem from wrongful conduct. "Damages are the sum of money which a person wronged is entitled to receive from the wrongdoer as compensation for the wrong." Frank Gahan, *The Law of Damages 1* (1936), *quoted in* BLACK'S LAW DICTIONARY 393 (7th ed.1999). Plaintiff's complaint asserts variously that the parole violation incarceration was caused by: Defendants' "willful and malicious conduct" (Complaint ¶ 71); a defendant's "unlawful search of [plaintiff's] residence and subsequent use of illegally seized evidence in the parole hearings" (Complaint ¶ 75); "malicious prosecution by each defendant ... [causing plaintiff] ... to have his parole revoked and to be sent back to prison" (Complaint ¶ 89); and "malicious abuse of process by each Defendant, [causing plaintiff] ... to have his parole revoked and ... to be incarcerated" (Complaint ¶ 96). Plaintiff's attempt to recover damages reflecting his incarceration for parole violation presumes that the parole revocation can be found to have been wrongful such that it caused him compensable injury. In other words, it necessarily implicates the invalidity of the finding that he violated his parole. Herein lies Plaintiff's *Heck v. Humphrey* problem. Even if Plaintiff had pled a cause of action sufficient in focus and scope to form an appropriate legal basis for his claim of damages for the period of his incarceration on the parole violation, *Heck v. Humphrey* would preclude the assertion of that cause of action in this section 1983 case because the parole revocation decision was never overturned.[4]

4. Judge Pauley's holding that "Defendants' reliance on *Heck* is ... misplaced" is not to

Like the hypothetical malicious prosecution cause of action posited in the majority opinion in *Heck*, Plaintiff's damages claim, to the extent it is focused on the parole violation confinement, constitutes " 'a collateral attack on the [parole violation finding] ... through the vehicle of a civil suit.' " *Heck*, 512 U.S. at 484, 114 S.Ct. 2364 (citation omitted). The *Heck* court rejected section 1983 as a viable vehicle for such an attack, holding that "[a] claim for damages bearing that relationship to a conviction or sentence that has *not* been ... invalidated is not cognizable under § 1983." *Id.* at 487, 114 S.Ct. 2364 (footnote omitted) (emphasis in original). The *Heck* holding applies equally in the parole revocation context. *See Sealey v. Fishkin*, No. 96 CV 6303, 1998 WL 1021470 at *5 (E.D.N.Y. Dec. 2, 1998) and cases cited therein.

The decision revoking Plaintiff's parole has not been vacated or otherwise invalidated. There is no indication that, during his 19–month incarceration, Plaintiff ever sought direct review beyond an "Appeal Unit" level.[5] His attempt collaterally to attack the revocation through state habeas corpus resulted ultimately in a ruling against him. He had sought a writ, arguing that the evidence at his initial parole revocation hearing had been inadequate to support the hearing officer's finding of probable cause to hold him over for a final revocation hearing; the state court granted that writ.[6] However, the state court held on reargument that the final parole revocation decision, which had been issued after the dismissal of the criminal charges against Dallas, had rendered moot any defects in the initial parole revocation proceeding. The state court also found that the final parole revocation decision was properly supported by evidence.[7] This second decision, which dismissed the petition for habeas corpus, was affirmed by an intermediate state appellate tribunal,[8] and there is no indication that Plaintiff pursued any further appeal. Nor is there any indication that Plaintiff brought on any collateral attack (other than the instant section 1983 action) of the final parole revocation decision. The Court notes as well that Plaintiff admitted in the parole revocation proceedings that he was guilty of two of the three operative charges, thereby clearly acknowledging valid bases for the revocation of his parole. *See Dallas I*, 1997 WL 728153 at *5.

 To the extent Plaintiff seeks implicitly to assert that his imprisonment resulted from violations actionable under section 1983, he has failed to meet the jurisdictional prerequisite set out in *Heck*

---

the contrary. *Dallas II*, 2000 WL 1092986 at *3. The Court was then analyzing the parties' arguments directed to the causes of action actually pleaded. As shown above, none of those causes of action encompasses, much less implicates the fact or duration of, plaintiff's incarceration upon the parole violation.

5. *See People ex. re. Dallas v. Johnson*, No. 22406, Decision and Order (S.Ct. Orleans Co. January 19, 1996) ("State Habeas Opinion") at 1. (Annexed as Ex. 20 to Affidavit of Bernard McCarthy, dated November 4, 1999, in opposition to defendants' motion for summary judgment.)

6. *Id.*

7. *Id.* at 1–2.

8. *Dallas v. Johnson*, 241 A.D.2d 979, 667 N.Y.S.2d 140 (4th Dep't 1997). The Fourth Department's summary affirmance cited to a decision holding that the issue of whether evidence at a preliminary parole hearing is sufficient to support a hearing officer's probable cause determination is " 'subsumed by revocation of ... parole' " and an appeal relating to the probable cause determination is thus mooted. *See Wilt v. Meloni*, 166 A.D.2d 927, 561 N.Y.S.2d 673 (4th Dep't 1990), *citing Collins v. Rodriguez*, 138 A.D.2d 809, 525 N.Y.S.2d 728 (3d Dep't 1988).

*v. Humphrey* and his attempt must fail. "[P]laintiff cannot recover damages arising from his incarceration for violating the conditions of his parole since the final revocation decision has never been overturned." *Dallas II*, 2000 WL 1092986 at *3 n. 2.

The Court recognizes that the Second Circuit has held that a section 1983 cause of action implicating the validity of a decision resulting in disciplinary confinement within a prison may be viable in situations in which a plaintiff has had no practical opportunity to bring on a collateral attack by way of habeas corpus or otherwise. In *Jenkins v. Haubert*, 179 F.3d 19 (2d Cir. 1999), the Second Circuit permitted a section 1983 action challenging prison disciplinary proceedings to go forward although the adverse disciplinary findings had not previously been overturned. The *Jenkins* court found that the claims related to conditions of confinement, rather than to the fact or duration of confinement within the meaning of *Heck v. Humphrey*. Plaintiff here, in contrast, is challenging the fact and duration of his confinement, rather than conditions of that confinement. The *Jenkins* holding also relied in part on an apparent post-*Heck* shift in the views of a majority of the current members of the Supreme Court toward the position that a section 1983 action challenging the fact or duration of confinement may be viable, notwithstanding the jurisdictional predicate articulated in *Heck*, if the plaintiff is no longer "in custody" and no habeas corpus remedy is available. *See Jenkins*, 179 F.3d at 25–6 (discussing *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998)).

This second element of the *Jenkins* holding does not, however, render viable plaintiff Dallas' attempt to recover damages for his parole revocation incarceration. Habeas corpus relief had been entirely unavailable to the *Jenkins* plaintiff, whose successive 30–day disciplinary confinements on different charges had terminated prior to commencement of the section 1983 litigation. *See Jenkins*, 179 F.3d at 20–1. The *Jenkins* plaintiff was clearly one whom the *Heck* analysis would have left—due to the short terms of the confinements—without any forum at all in which to assert the alleged constitutional violations. *See id.* at 27.

Notwithstanding broad language in Justice Souter's concurring opinions in *Heck* and in *Spencer v. Kemna*, positing the availability of section 1983 to persons not "in custody," the discussion in those opinions evinces a primacy of concern as to the practical availability of effective review. As Justice Souter has noted, persons sentenced to fines only, or who serve very brief periods of incarceration or parole, or who do not become aware of their potential constitutional claim until after their confinement has been completed, may lack a practical opportunity to seek to overturn the underlying state determinations through direct appeal and/or federal habeas corpus proceedings. *See Heck*, 512 U.S. at 500, 114 S.Ct. 2364 (Souter, J., concurring). Or, like the plaintiff in *Spencer v. Kemna*, they may despite due diligence be unable to complete the appropriate processes prior to the expiration of a short term of imprisonment. *See Spencer*, 523 U.S. at 20–1, 118 S.Ct. 978 (Souter, J., concurring). The Second Circuit's applications of the Souter rationale reflect similar concerns—the *Jenkins* plaintiff could not have mounted a meaningful challenge before his 30–day disciplinary confinements had expired. The plaintiff in *Leather v. Ten Eyck*, another case in which the Circuit permitted pursuit of a section 1983 action by a convicted defendant challenging the prosecution that led to the conviction, "never was in the custody of the State." 180 F.3d 420, 424 (2d Cir.1999).

*Zupan v. Brown,* 5 F.Supp.2d 792 (N.D.Cal.1998) and *Johnson v. Freeburn,* 29 F.Supp.2d 764 (E.D.Mich.1998), cases also relied upon by plaintiff, similarly involved very short periods of confinement (six weeks and six days, respectively).

Plaintiff's claim is within the ordinary ambit of the *Heck* rule. He was in a position to seek review of the final parole revocation decision while he was in custody. He did not do so. The Court finds neither basis nor reason under the circumstances in this case to extend the *Jenkins* extrapolation of likely Supreme Court voting patterns to permit Plaintiff's collateral attack on the decision revoking his parole, particularly where he has failed—in the fifth year of this litigation—even to articulate a cause of action that would support review of the parole revocation decision. Plaintiff was clearly aware of his issues with respect to the criminal charges and the parole revocation proceedings at the time they were going on and during his confinement. He brought on a state collateral proceeding, albeit one attacking an intermediary stage of the parole revocation process rather than the final decision. Unlike the brief disciplinary confinements and related procedures at issue in *Jenkins,* the circumstances of Plaintiff's parole revocation clearly did not deprive him of the opportunity to assert the wrongful imprisonment claims he seeks to pursue here. Rather, he failed to do so diligently or effectively during his incarceration.

*Heck v. Humphrey* precludes Plaintiff's attempt to circumvent that failure by invoking the incarceration as a basis for a claim of consequential damages in this section 1983 action. Although it is unclear whether a Supreme Court majority could be mustered to embrace *Heck*'s accrual rational were the case to be relitigated today, the *Heck* holding has not been overruled by that Court. The Circuits that

have permitted actions to go forward in a manner seemingly inconsistent with the majority opinion in *Heck* have done so under circumstances quite different from those presented here.

Absent clear Supreme Court or Second Circuit authority authorizing the approach in a case such as this, the Court declines further to extend the notion of a separate section 1983 track for persons who failed while in custody to satisfy *Heck*'s predicate requirement for a section 1983 action challenging the fact or duration of confinement. To do so would be to give plaintiffs who wish to challenge the validity of the proceedings underlying their incarceration the option of forgoing direct reviews, and avoiding both the exhaustion requirements of federal habeas corpus and the deferential standard of review attendant to habeas proceedings, in favor of a direct, plenary examination of federal constitutional issues in a section 1983 action brought after their release from confinement.

Accordingly, Plaintiff is not entitled at trial to seek damages in respect of his incarceration upon revocation of his parole. Such damages are outside the scope of the causes of action pleaded in the Amended Complaint and no section 1983 cause of action for such damages has yet accrued (see discussion of *Heck v. Humphrey, supra* ).

## CONCLUSION

For the foregoing reasons, Defendants' motion to bifurcate the trial is denied; Plaintiff's motions to preclude the introduction of evidence of his convictions is granted with respect to the Prior Convictions and decision is reserved for trial with respect to Plaintiff's current conviction; Plaintiff's motion to preclude Defendants' use of evidence of drug paraphernalia is granted, except to the extent that such evidence may be proffered for impeach-

ment value (as to which issue decision is reserved for trial); and Plaintiff will not be entitled at trial to seek an award of damages in respect of his incarceration for violating parole.

SO ORDERED.